UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Eric Kohli,

   Plaintiff

v.

Ajay G. Dayal, et al.,

   Defendants

Case No. 2:20-cv-00538-CDS-NJK

**Order Issuing Sanctions**

   This action was brought by plaintiff Eric Kohli, a lawyer representing himself pro se, for the payment of money allegedly owed due to performance of an employment contract. Kohli sued defendants Ajay G. Dayal, Quantified Investment Group LLC, Quantified Capital Group, Pacific Bay Lending Group, and Miss Elegant Expo for defendants' refusal to pay Kohli's salary and wages after he performed two months' work for defendants. *See generally* First am. compl., ECF No. 17. This case proceeded to a four-day jury trial against Dayal only on November 18, 2024. At the conclusion of the trial, the jury returned a verdict in favor of Kohli.

   Following the trial, on January 17, 2025, I issued an order to show cause against Kohli requiring him to respond and explain why he should not be sanctioned for repeatedly failing to comply with the court's orders not to introduce improper character/bad act evidence before first proffering it to the court. OTSC, ECF No. 238. Kohli retained counsel[1] and filed a timely response to the show-cause order, which was accompanied by a declaration from Kohli. Resp., ECF No. 244.

---

[1] *See* Notice of appearance, ECF No. 243.

I.  Background

As set forth in the order to show cause, neither party filed a motion with the court regarding the introduction of character and/or bad act evidence prior to the start of trial. ECF No. 238.[2] On the second day of trial, after considering improper statements made during opening statements on the first day of trial, I addressed the parties and reminded them that an order of the court is neither optional nor something that can casually be referenced in front of the jury, then directly disregarded. I further reminded the parties that neither side had moved in limine to introduce any character/bad act evidence, yet both parties had referred to character evidence during their openings. The parties were admonished that further improper statements would result in sanctions. Both parties indicated on the record they understood the court's orders.

Later that day, and despite the admonition I had given the parties at the start of the second day of trial regarding inappropriately referencing character evidence in opening statements, Kohli asked one of his witnesses, on direct examination, a series of questions suggesting that Dayal scammed him out of a commercial real estate deal which was completely unrelated to the issues at trial. As part of that exchange, Kohli asked the witness to explain what happened. In his responses, the witness told the jury that the defendant, Dayal, took $115,000 from him and never returned it and that Dayal had "cheated" a real estate deal. Kohli directly asked the witness about him being "cheated" and "scammed."[3]

---

[2] The show cause order is incorporated into this order as if fully set forth herein.

[3] As set forth in the rough transcript, Kohli posed the following questions to the witness: (1) "Okay. So this particular time when you were upset when the -- when the -- when you realized the deal that -- **that you'd been cheated**, you came in. Did you see me in there that -- that day?" (emphasis added); (2) "I'm talking about your interaction with me directly. We had -- the jury understands that this is a **bad deal** but when you came in the office, you saw me in the office. You're all upset. Mr. Dayal is hiding. What happened between you and I?" (emphasis added); (3) Okay. Did you get an impression at any time that I was part of this, you know, **scamming you out of your money from Mr. Dayal**?" (emphasis added); and (4) [Witness], you sent an e-mail, right? And this is -- give me just a second. Okay. You sent an e-mail. I'm sorry. It's not part of the exhibits. But you sent an e-mail and I -- the e-mail I'm referring to, **you said I've been cheated and scammed** by Quantified Investment Group, blah, blah, blah. Do you remember sending that e-mail?" (emphasis added).

2

Specifically, the witness was also asked the following question:

MR. KOHLI: "Based on your knowledge and what you have seen and witnessed and heard, is Mr. Dayal a menace to the South Asian Community?"

The court instructed the witness not to answer the question and recessed the trial for the day. Because of the aforementioned character evidence Kohli introduced while questioning his witness, the court provided the jury a limiting instruction before releasing them for the day. That instruction cautioned the jury that they had heard alleged bad acts committed by the defendant but those allegations were not part of this case, so the only evidence they could consider was testimony related to the witness's knowledge of Kohli's relationship to Dayal, and only to the degree that evidence was relevant to the specific causes of action. The jury was also instructed that Dayal was not on trial for any of the allegations lodged by the witness. Once the jury left the courtroom, the court canvassed the parties on administrative questions related to the trial, and specifically asked Kohli if he intended to introduce additional allegations of alleged bad acts/character evidence about Dayal. I cautioned Kohli that his introduction of bad acts character evidence was improper, so he was ordered to instruct his witnesses not to testify about alleged bad acts committed by Dayal, and I admonished Kohli for failing to seek permission from the court before introducing the evidence.

On the start of the third day of trial, I had the following exchange with Kohli:

THE COURT: I again caution you regarding eliciting any bad act or character evidence. In fact, before you elicit any questions about any bad acts or character evidence, I'm going require a proffer at sidebar.

MR. KOHLI: Okay. Judge, just so the court knows, there were questions regarding that in my outline for these witnesses. I've taken it out. Just as a caution.

Despite this exchange, and the prior day's admonition, approximately one hour later, the following exchange occurred between Kohli and one of his witnesses, who is a publicly elected official:

| | |
|---|---|
| THE WITNESS: | Yes. So Mr. Dayal would call me and just, you know -- I had other issues dealing with trust and some -- some problems that came up -- |
| MR. KOHLI: | Regarding. I'm sorry to interrupt. Regarding this case. |
| MR. DAYAL: | Objection, your Honor. Relevance. |
| THE COURT: | I'm overruling that objection. However, I'm going to go back. The question was: Did Mr. Dayal ever contact you about this trial? You said, yes, many times. And the next question was what did he say. You can answer that question. |
| THE WITNESS: | Okay. So Mr. Dayal would respond with a lot of different things. You know, we had an issue with trust and fraud that had come up and I was trying to fix this issue and then he would always bring up this case as a -- it was something -- he said he won this case multiple times and that there was no need to go to trial and all this -- I mean, it was a -- on going -- it was constantly just talking about -- about . . . |
| MR. KOHLI: | [Witness], did he ever talk to you or say anything about this particular judge? |
| THE WITNESS: | Yes. Yes. |
| MR. KOHLI: | Can you tell us what he said? |
| THE COURT: | No. |
| MR. DAYAL: | Objection, your Honor. |
| THE COURT: | Sidebar. |

At sidebar, Kohli was again admonished about the order I gave approximately one hour before this line of questioning was presented in front of the jury, as it was clear the line of questioning was directed towards suggesting the defendant attempted to improperly influence the witness

4

and allegedly attempted to influence this court. When asked why Kohli would elicit this line of questioning, he responded: "Judge, Mr. Dayal contacted [the witness] because of his political affiliations to impact the judge or to influence the judge and I think it's relevant for the jury to hear." I told Kohli that this was character evidence he was required to proffer to the court before attempting to elicit that sort of testimony from witnesses in front of the jury, to which he responded, "I'm sorry."

The court took a recess to determine how it should proceed considering Kohli's repeat violations of my orders regarding the introduction of character evidence. Before bringing the jury back into the court, I made the following statement to Kohli:

> [Y]ou are representing yourself. But are you a member of the bar. You are dangerously close to being reported to the state bar based on your conduct during the course of this trial. I've never in my time as a judicial officer had to repeatedly say my orders are not optional. And yet, I've had to say it in this trial. I have to say it again and the blatant disregard of the rules and your obligations under the professional rules of conduct is unacceptable.[4]

## II.  Discussion

Pursuant to its inherent power, a court may assess sanctions against parties and counsel for a variety of forms of misconduct, including the "willful disobedience of a court order." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258 (1975). Before awarding sanctions under its inherent powers, however, the court must make an explicit finding that counsel's conduct "constituted or was tantamount to bad faith." *Roadway Express v. Piper*, 447 U.S. 752, 767 (1980). A "specific finding of bad faith . . . must precede any sanction under the court's inherent powers." *Id.* at 767; *see also Zambrano v. Tustin*, 885 F.2d 1473, 1478 (9th Cir. 1989); *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001).

In Kohli's response to the show-cause order, he proffers that he appeared pro se on behalf of himself and emphasizes that he is not an experienced trial attorney, but rather one whose practice was focused on patent and trademark work. ECF No. 244 at 1. He further notes that it

---

[4] This, and the other quotes included in this order, are from the rough transcript of the trial proceedings.

was his first trial, that he believed he sufficiently understood trial protocols and the applicable rules, that he did not intend to violate this court's orders, that he lacked trial experience and substantive knowledge to guide himself in accordance with this court's orders, and that he did not have any intent to violate those orders. *Id.* Kohli apologizes to the court for his errors and notes he will not "disrespect this Court by stating" that he should not be sanctioned. *Id.* at 2; *see also* Kohli dec., Pl.'s Ex. 1, ECF No. 244-1 at ¶ 10. As evidence of his embarrassment and acceptance of responsibility for his errors, Kohli registered, and was in the process of completing, an additional Continuing Legal Education (CLE) refresher regarding the Federal Rules of Evidence, with an emphasis on Rule 404, when the response to the show cause order was filed. *Id.* at 2; *see also* CLE certificate, Pl.'s Ex. 2, ECF No. 244-2. Kohli further volunteers to complete other courses as ordered by the court, and notes that retention of counsel is further evidence of his sincere regret. ECF No. 244 at 4–5.

      The court appreciates Kohli's response and accepts his apology as sincere. But the question before the court is not whether Kohli's apology is sincere, but rather if Kohli's conduct was, or tantamount to, bad faith at the time he engaged in it. Unfortunately, I find that it was tantamount to bad faith for two reasons. First, Kohli was warned at least twice he was not entitled to any special leniency because he, himself, is an attorney. *See* ECF No. 103 at 1 n.2 ("The Court again notes that Plaintiff has not hired an attorney in this matter, but that his filings are not entitled to any special leniency because he himself is an attorney." (collecting cases)); ECF No. 136 at 3 (same). Although a sincere request, Kohli's response to the show cause order in part asks for special leniency because he lacked trial experience. The court understands some practitioners may lack courtroom experience in comparison to others, and the court makes accommodations accordingly. But even taking that into account, that does not explain away the second reason I find that Kohli's conduct was tantamount to bad faith. Just one hour after being admonished *again* that his introduction of bad act/character evidence was improper, and again being reminded that he was ordered to instruct his witnesses not to testify about alleged bad

acts committed by the defendant, he nonetheless questioned his witness about a specific act: whether the defendant had attempted to contact me, as the presiding judge, in some attempt to influence me. To the extent this was some sort of attempt to attack Dayal's character for truthfulness, which is wholly unclear, it was not only procedurally improper because Dayal had not yet testified, but by failing to proffer the evidence to the court, it defied my order, and it also deprived me of the ability to determine, in my discretion, whether it was probative and/or relevant and, if relevant, if it was even admissible, or if it was more prejudicial than probative. *See* Fed. R. Evid. 608(a) ("[E]vidence of truthful character is admissible only after a witness's character for truthfulness has been attacked.") and 608(b)("[T]he court may, on cross-examination, allow [the witness's prior acts] to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness . . . or . . . another witness whose character the witness being cross-examined has testified about."); Fed. R. Evid. 403 (permitting the court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, amongst other factors). At the time Kohli defied this order, he (1) had been admonished twice about introducing improper character evidence, (2) had been ordered to proffer any character evidence before introducing it, and (3) was present when I instructed the jury that Dayal was not on trial for any of the allegations lodged against him by a prior witness but only for the causes of action in the complaint. Stated otherwise, Kohli was given numerous warnings and instructions about how to comport and abide by the rules of evidence and this court's orders but chose to defy them repeatedly. This is evidence that his conduct was tantamount to bad faith, especially given he engaged in the conduct against an unrepresented party, so sanctions are warranted here.

   Because the court accepts the apology and the acceptance of responsibility from Kohli was sincere, the court issues the following sanctions:

   (1) Kohli must provide proof he completed the CLE class he was enrolled in at the time he filed his response to the show cause order (ECF No. 244 at 2; ECF No. 244-2);

(2) Enroll in and complete a basic trial advocacy class offered through the State Bar of Nevada, NITA,[5] or an equivalent program; and

(3) File a certification with the court that he has reviewed all the Nevada Rules of Professional Conduct, to include Rule 4.3, which addresses dealing with unrepresented persons.

Kohli must complete these requirements by November 19, 2025.

### III.  Conclusion

IT IS HEREBY ORDERED that the show cause order **[ECF No. 238] is discharged**.

IT IS FURTHER ORDERED that by November 19, 2025, Eric Kohli must:

(1) Provide proof he completed the CLE class he was enrolled in at the time he filed his response to the show cause order (ECF No. 244 at 2; ECF No. 244-2);

(2) Enroll in and complete a basic trial advocacy class offered through the State Bar of Nevada, NITA, or an equivalent program; and

(3) Certify to the court that he has reviewed all the Nevada Rules of Professional Conduct, to include Rule 4.3, which addresses dealing with unrepresented persons.

Dated: May 19, 2025

_____
Cristina D. Silva
United States District Judge

---

[5] See https://www.nita.org/s/ (last accessed on May 14, 2025).